Bichard son, Ch. J.,
delivered the opinion of the court:
There are two causes of action in this claim. One is for property of the claimant taken or destroyed by the defendant Indians, alleged to be in amity with the United States. Upon this the court has found the facts in favor of the claimant and gives him judgment for $897, the same amount as found due by the Interior Department, and no question of law is presented.
The other cause of action, as alleged in the petition, is that the “claimant sustained from the Comanche Indians great damage, who unlawfully and maliciously, and without provocation on his part, entered upon his premises and entered his dwelling house, captured his wife, scalped, multilated, and otherwise injured and maltreated her, and carried away his young son Temple, whom they held for several years.”
The only law in the case arises upon this second allegation, as to which the facts are found as set out in the second finding, and the question is whether the court has jurisdiction or can give judgment of such a claim under the Indian Depreda, tion Aet, Mareh 3, 1891, chapter 538 (Stat. L., 851, and 1 Supp. Kev. Stat., 2d ed., p. 913).
That act provides as follows:
“That, in addition to the jurisdiction which now is or may hereafter be conferred upon the Court of Claims, said court shall have and possess jurisdiction and authority to inquire into and finally adjudicate, in the manner provided in this act, ■ all claims of the following classes, namely:
“First. All claims for property of citizens of the United States taken or destroyed by Indians belonging to any band, tribe, or nation in amity with the United States, without just cause or provocation on the part of the owner or agent in charge, and not returned or paid for.
*428 “Second. Such, jurisdiction shall also extend to all cases which have been examined and allowed by the Interior Department, and also to such cases as were authorized to be examined under the act of Congress making appropriations for the current and contingent expenses of the Indian Department, and for fulfilling treaty stipulations with various Indian tribes for the year ending June thirtieth, eighteen hundred and eighty-six, and for other purposes, approved March third, eighteen hundred and eighty-five, and under subsequent acts, subject, however, to the limitations hereinafter provided.”
It is apparent that the act relates exclusively to “claims for property of citizens of the United States taken or destroyed by Indians,” etc., as set- out in the “first” paragraph. That idea rims through all the rest of the act.
The second paragraph is “such jurisdiction shall also extend to all cases which have been examined snd allowed by the Interior Department,” and also to such cases as were authorized to be examined under the act of Congress of March 3, 1.885, and subsequent acts.
The words “all cases” in the first part of the second paragraph clearly refer to cases of claims for property taken or destroyed as previously specified.
The words “ such cases” in the second part of the second paragraph, if that part stood alone, might be heldbroad enough to confer jurisdiction on this court of all claims or cases authorized tobe examined by the Interior Dejiarfcment besides those for destruction of property, if any there were; but we shall see that, taking all the acts together, Congress has never made provision for the payment of any injuries by Indians except for depredation to property, and certainly has never undertaken to make the Government liable for any other injuries.
The act of 1885, above cited, printed in a note to the jurisdictional Act of 1891 oh. 538 (1 Supp. Eev. Stat., 2d ed., p. 913), in authorizing the Secretary of the Interior to investigate and report upon cases of Indian depredations, makes this significant provision relating only to property taken or destroyed:
“And the Secretary is authorized and empowered, before making such report, to cause such additional investigation to be made and such farther testimony to be taken as he may deem necessary to enable him to determine the kind and value of all property damaged or destroyed by reason of the depredations aforesaid, and by what tribe such depredations were committed; and his report shall include his determination upon *429 each claim, together with the nam es and residences of witnesses and the testimony of each, and also what funds are now existing or to be derived by reason of treaty or other obligation out of which the same should be paid.”
This shows beyond- all doubt what kind of depredations Congress was legislating upon, and that it did not intend to include anything but depredation to property.
The claimant contends that this claim comes under the act of 1885, directing the Secretary of the Interior to examine, make a list, and report upon certain claims within the meaning of the words “ also all such claims as are pending, but not examined, on behalf of citizens of the United States on account of depredations committed chargeable against any tribe of Indians by reason of any treaty between such tribe and the United States,” and is brought -within the jurisdiction of this court by the terms of the jurisdictional act of 1891.
In support of this contention reliance is placed on the following provision of the treaty of August 25,1868 (15 Stat. L., 581):
“ If bad men among the Indians shall commit a wrong or depredation upon the person or property of anyone — white, black, or Indian — subject to the authority of the United States and at peace therewith, the tribes herein named solemnly agree that they will, on proof made to their agent and notice by him, deliver up the wrongdoer to the United States to be tried and punished according to its laws, and in case they willfully refuse so to do, the person injured shall be reimbursed for his loss from the annuities or other moneys due or to become due to them under this or other treaties made with the United States.”
The primary object of this provision was for the delivery up of the wrongdoers for punishment, and it was only in case-the tribes willfully refused such delivery up “on proof made to their agent and notice by him, the person injured shall be reimbursed for his loss from the annuities or other moneys due or to become due to them ” under their treaties.
The words “reimbursed for his loss” are not apt words to describe damages for personal injuries to one’s self, or for scalping his wife, or carrying off his son and detaining him in cap-' tivity for some years. But conceding that they are broad enough to include the present claim, the tribe was to become chargeable only upon condition that the injured party should *430 first make proof to the agent of the tribe and notice by him to the latter and their willful refusal to deliver up the wrongdoer.
These obligations upon the injured party constituted a condition precedent, and until preformed there was not even a prima facie liability on the part of the Indians under the treaty, and it does not appear by the findings and is not alleged in the petition that they were performed in this case,- so that the Indians never became liable under the treaty at all, and the Secretary of the Interior was not authorized to examine and include in his list and report to Congress any such claims.
We therefore dismiss so much of the petition as relates to damages for injuries to the wife and child of the claimant, and we give him judgment for the. loss and destruction of his property.