Nott, Ch. J.,
delivered the opinion of the court:
In July, 1861, Aaron Decker, the original claimant, was an intruder upon the lands of the Gherokees. In that month a considerable body of Indians appeared and threatened the white settlers in the neighborhood of the claimant with injury and destruction of property if they did not remove. In the next month they reappeared and, it is believed, killed some of the settlers and compelled all of them to remove. The claimant was not actually injured or threatened, but he left under the stress of intimidation, carrying with him the most of his stock and some of his personal property. One cow and a number of swine were left behind, and it subsequently appeared, after the lapse of some years, that his house and barn and fences and crops had been burnt and destroyed. It does not appear whether the Cherokees were acting officially — that is to say, by *109 authority of the Cherokee government — or whether they were a mere mob. The court, however, is satisfied that the Indians were Cherokees, and that their acts amounted to intimidation and compulsion.
The Indian Depredation Act, 1891 (§ 1), imposes the jurisdictional condition that a depredation must have been committed “ without just cause or provocation on the part of the owner” of the property. Intrusion on the lands of the Indians, it was argued by the defendants, was “ provocation” within the intent of the statute. On the part of the claimant it was contended that this intrusion was not “provocation5” that the provocation which the statute intends must be provocation known to the law as such; that trespass does not authorize the destruction of property, and that under the Cherokee treaty, 1835, article 6, intruders can only be removed “ by order of the President of the United States,” and therefore can not be removed by either an Indian mob or Cherokee authority.
As has been repeatedly said by the court, the Indian Depredation Act, 1891, is strictly jurisdictional. It affords a remedy for already existing claims, but neither defines them nor creates new liabilities against Indians. The words “ without just cause or provocation ” may impose a new limit upon the new remedy given by the statute, but do not operate retroactively upon the rights of the claimant or the liabilities of the defendants.
The Indian Trade and Intercourse Act 30th June, 1834 (4 Stat. L., p. 729, sec. 17), as modified by the Act 28th February, 1859 (11 id., 401), and the Joint Resolution 25th June, 1860 (12 id., 120), is the statute which created and defined and regulated the liabilities of the Indians and of the United States at the time when this depredation was committed. It provided as follows:
“ And be it further enacted, That if any Indian or Indians, belonging to any tribe in amity with the United States, shall, within the Indian country, take or destroy the property of any person lawfully within such country, or shall pass from the Indian country into any State or Territory inhabited by citizens of the United States, and there take, steal, or destroy any horse, horses, or other property belonging to any citizen or inhabitant of the United States, such citizen or inhabitant, his representative, attorney, or agent may make application to the proper superintendent, agent, or subagent, who, upon being *110 furnished with the necessary documents andproofs, shall,under the direction of the President, make application to the nation or tribe to which said Indian or Indians shall belong for satisfaction; and if such nation or tribe shall neglect or refuse to make satisfaction in a reasonable time, not exceeding twelve months, it shall be the duty of such superintendent, agent, or subagent, to make return of his doings to the Commissioner of Indian Affairs, that such further steps may be taken as shall be proper, in the opinion of the President, to obtain satisfaction for the injury; and, in the meantime, in respect to the property so taken, stolen, or destroyed, the United States guaranty, to the party so injured, an eventual indemnification: Provided, That if such injured party, his representative, attorney, or agent, shall, in any way, violate any of the provisions of this act, by seeking or attempting to obtain private satisfaction or revenge, he shall forfeit all claim upon the United States for such indemnification: And provided also, That unless such claim shall be presented within three years after the commission of the injury the same shall be barred. And if the nation or tribe to which such Indians may belong receive an annuity from the United States, such claim shall, at the next payment of the annuity, be deducted therefrom and paid to the party injured; and if no annuity is payable to such nation or tribe, then the amount of the claim shall be paid from the Treasury of the United States: Provided, That nothing herein contained shall prevent the legal apprehension and punishment of any Indians having so offended.”
The term “ without just cause or provocation” of the jurisdictional act may refer to the limitations, express or implied, in this section, or may include them or may be exclusive of them; but nevertheless the subject of liability must be measured by the terms of the act of 1834. When that statute said that if Indians of a tribe in amity with the United States “ shall, within the Indian country, take or destroy the property of any person lawfully within such country,” the injured party (that is, the party “ lawfully within such country”) shall have against the Indians the redress subsequently prescribed, and the United States will “ guarantee to the party so injured an eventual indemnification,” it necessarily excluded from its benefits such persons as should not be “lawfully within such country.” The defining of one class of persons excluded other classes of persons from its intendment. Usspressio unius, ex-olusio alterius. The act said in effect to Indians, if you “ pass from the Indian country into any State or Territory inhabited by citizens of the United States, and there take, steal, or *111 destroy,” you shall be held liable for your depredation; and if, within the Indian country, you “take or destroy the property of any person lawfully within such country,” you shall likewise be held liable. But the statute assured indemnity to white men only in these two classes of cases, viz, where the Indians were intruders in the white man’s country, and where the white man was lawfully within the Indians’ country. The statute did not change the law of trespass, or make it lawful for Indians to kill and rob and destroy, or authorize Indians forcibly to eject white intruders. What it did do was to create a liability on the part of the Indians and a responsibility on the part of the United States, and at the same time prescribe the limitations within which this liability and responsibility only should arise.
The facts of this case, then, present the question whether the claimant was at the time of the depredation lawfully ‘"within the Indian country.” The statute which makes this lawful entry a condition to redress, the act of 1834, likewise prescribes that the military may apprehend “every person who shall or may be found in the Indian country” and turn him over to the civil authority “to be proceeded against in due course of law,” and that the military may be used “in preventing the introduction of persons and property into the Indian country contrary to law.” (§ 23.) The statute also defines “ all that part of the United States west of the Mississippi, and not within the States of Missouri and Louisiana, or the Territory of Arkansas,” as “the Indian country.” (§ 1.) It also provides that if any person “shall make a settlement on any lands belonging, secured, or granted by treaty with the United States to any Indian tribe” “such offender shall forfeit the sum of $1,000. And it shall, moreover, be lawful for the President -of the United States to take such measures, and to employ such military force, as he may judge necessary to remove from the lands as aforesaid any such person as aforesaid.” (§ HO
It therefore seems to the court that this statute, which limited the liability which it created to persons who are lawfully within the Indian country, itself defined what was unlawful. The claimant was an intruder contrary to the terms of the statute, liable to be driven off by the military and prosecuted *112 by tbe civil authorities. The Indians may not have been jus tilled in taking the law into their own hands and driving the settlers off by force or intimidation, but that was a matter between them and the Government of the United States. The Cherokee Nation was not.liable to the person who was unlawfully within its territory, and the Government is not responsible to him for the consequences of his unlawful acts.
The judgment of the court is that the petition be dismissed.