WeldoN, J.,
delivered the opinion of the court:
The petition embraces two claims of different parties, having distinct and separate interests, and therefore separate judgments will be rendered on the claim of each. In the year 1847, the decedent Henry C. Miller and the decedent Philip W. Thompson, both being native-born citizens of the United States, were owners in severalty of 44 head of oxen, 5 wagons, and a large amount of dry goods.
While they were so possessed, the defendants, the Osage Indians, then being in a state of amity with the United States, attached the train of said decedents and took from their possession about 40 head of said oxen, drove them away, and they became lost to the decedents.
The depredation was committed on the 26th of June of said year, near the Arkansas River, on the route from western Mis: souri to Santa Fe. In consequence of the taking of the cattle the parties were compelled to abandon their trip and were forced to sell the goods at a much less price than their cost and their value at the point of destination. The property belonged in the proportion of four-fffths to Miller and one-fifth to Thompson. The claim was presented to the Interior Department in June, 1872, and on December 13,1889, the Secretary of the Interior recommended an allowance of $8,250, which was not paid. In the amount is embraced the loss on the goods.
The claimants brought suit on the allowance of the Secretary, but the defendants elected to reopen the case, contesting it on the ground that the allowance of the Secretary was erroneous as to the loss on the goods. The defendants have not, by the introduction of new evidence, sought to attack the claim upon the whole case, but upon the specific ground that the allowance is based upon an erroneous construction of the law as to- the extent of the claimants’ right of recovery.
A demurrer was filed to the original petition, which was sustained and leave given to amend; an amended petition was filed on the 26th of April, 1896, and to the amended petition a demurrer was also filed, which was overruled. The cause was tried on the amended petition and plea to the merits. By the allegations of the amended petition the suit is brought on the award of the Secretary of the Interior, and being so founded it is not necessary that the petition allege matters of *109 fact which constituted the original claim. It is sufficient if the petition shows with reasonable certainty the finding and award of the Secretary.
It was contended in the argument on the demurrer that the petition was defective in not alleging that the depredation was committed “ without just cause or provocation on the part of ..the owner or agent in charge and not returned or paid for.” The court said informally, in substance in overruling the demurrer, if the decedents provoked the Indians to commit the depredation so as to relieve them from responsibility, that is a defense on the merits; but as we are advised by the form of the petition, we should hold that it was not the fault of the decedents that the depredation was committed. As to the want of an allegation that the property had not been returned or paid for, that question can only be reached on the merits of the cause should it be reopened by the election of the defendants.
In the argument of the first demurrer it was contended by counsel for the claimant, that inasmuch as the defendants had not elected to reopen the cause, they had no right to interpose objections to the sufficiency of the petition; but the court held that the defendants had a right to interpose a demurrer without first exercising the right to reopen. Although the merits of the claim can not be attacked except by a reopening by the defendants when the suit is based upon the award of the Secretary, they have a right to interpose objections to the sufficiency of the petition and try by demurrer the legal question whether upon the showing of the petition there is a right of recovery.
In this case the defendants, not abiding by their demurrer, have filed an election to reopen, but have not introduced additional evidence, so that the case is to be decided on the evidence filed in the Department on which the Secretary based the award.
The act of 1891 (26 Stat. L., 851) provides as to cases determined by the Secretary that they “shall have priority of consideration by such court, and judgments for the amount therein found due shall be rendered unless either the claimant or the United States shall elect to reopen the case and try the same before the court, in which event the testimony given by the witnesses and the documentary evidence, including reports of the Department agents therein, may be read as depositions *110 and proofs. Provided, that the party electing to reopen the case shall assume the burden of proof.”
The effect of this provision of the statute is,’that the party electing to abide by the finding of the Department has a prima facie right of recovery or defense, and the award must stand in favor of such party unless it is shown by the party reopening the case that the award is erroneous either in fact or in law. The burden of proof is an appreciable quantity in judicial determination, in this, that one of the parties has a prima facie right of recovery, and unless that right is overcome by the introduction of proof it must prevail. The right may be very frail in its character, but it is sufficient to base a recovery upon as long as it is not successfully assailed. The statute does not imply that the burden of proof involves a necessity and obligation upon the part of the party reopening the case to introduce new and additional evidence to that which is on file in the Department, but leaves it open to implication that the case may be determined on the evidence on file, and upon that evidence the court may decide that the award of the Secretary is erroneous either in fact or in law. Congress in the enactment of the law may have properly assumed that in a majority of cases the party presented all his testimony to the Department, as that is the usual practice in the presentation of claims and demands for adjustment either to a court or to an arbitration; and therefore to limit the jurisdiction of the court to cases in which additional evidence is introduced would be to circumscribe the power of the court in violation of the purpose and intent of Congress. It is said in substance in the case of Wolverton (29 C. Cls. R., 19) that the award of the Secretary of the Interior will not be lightly disturbed by the court on the same evidence. See also Montoya Gane (32 C. Cls. R., 71).
The burden of proof therefore requires that the party reopening the case shall adduce to the court a substantial reason either in fact or in law why the award of the Secretary should be reversed in whole or in part. It is said in substance in the case of Cox (29 C. Cls. R., 349) that when the defendants elect to reopen a case they may set up any defenses which might have been set up in the Interior Department. Under that construction of the law the jurisdiction of the Secretary may be raised by the defendants either as to a part or the whole of a claim.
The defendants contest the right of the claimant to recover *111 on tbe award of the Secretary on the ground that in the allowance he included the difference between the value of the goods and the price at which the decedents were compelled to sell.
If this were a proceeding at common law against an ordinary wrongdoer in the form of an action ex delicto, the right to recover to the full extent of the injury inflicted, including direct and consequential damages, would be clear and unquestionable; but it being a proceeding under a statute the phraseology of which limits the extent of the recovery, and the consequent right of recovery, the rule is different. The property actually taken in the depredation was the oxen, and the damages incident to the rest of the property were the consequential results of such taking.
The first law of Congress affecting the intercourse of the Indians and the citizens of the United States was passed on the 22d day of July, 1790 (1 Stat. L., 137), and continued for the space of two years. The purpose of that act was to protect the Indians against the encroachments of the whites, by providing severe penalties agaiust them for the commission of certain offenses within the territory of the Indians.
The next act affecting the Indian tribes was passed on the 3d of March, 1793 (1 Stat. L., 329), and is entitled '“An act to regulate trade and intercourse with the Indian tribes.” This act, as its title indicates, regulates the trade and intercourse with Indians, but contains no provision as to depredations by the Indians on the property of the citizens. This statute continued in force for two years from the 1st of March, 1793.
After the expiration of the act of March, 1793, there was no law regulating or defining the rights of the Indians and the duties of the citizens until the passage of the law of May 19, 1796 (1 Stat. L., 469), entitled “An act to regulate trade and intercourse with Indian tribes and to preserve the peace on the frontier.”
The title of this act indicates a broader purpose and policy than the former statute in providing obligations and liabilities on the part of the Indians. In the fourteenth section of the act it is enacted “that if any Indian or Indians belonging to any tribe in amity with the United States shall come over or cross the said boundary line'into any State or Territory inhabited by citizens of the United States and there take, steal, or destroy any horse, horses, or any other property belonging to any citizen or inhabitant of the United States * * * or *112 shall commit murder, violence, or outrage upon any such citizen or inhabitant, it shall be the duty of such citizen or inhabitant * * * to make application to the superintendent or such other person as the President of the United States shall authorize for that purpose,” who upon such notice are by the terms of the law required to do certain acts in order to obtain satisfaction from the Indian tribe or nation to which the offending Indian belonged.
-The provisions of the act of 1796, reenacted March 3,1799 (1 Stat. L., 747), and March 30,1802 (2 Stat. L., 139), continued to be the law regulating intercourse and trade with the Indians until the year 1834, when the act entitled “An act to regulate trade and intercourse with the Indian tribes and to preserve peace on the frontier” (4 Stat. L., 729) was enacted. The title of this act is the same as that of 1796, and it is much more elaborate in its provisions, but the same in substance in many particulars.
By the seventeenth section of the act of 1834, which is similar to the fourteenth section of the former act, it is in substance provided that if any Indian whose tribe is in amity with the United States shall within the Indian country “take or destroy the property” of any person within such country, or shall pass from the Indian country into any State or Territory inhabited by citizens of the United States and “there take, steal, or destroy horses or other property” belonging to a citizen or inhabitant, upon that condition of fact certain steps shall be taken upon the part of the owner looking to his indemnification, as provided by the act.
The statute of 1796, the statute of 1834, and the statute of 1891 employ substantially the same words in defining the character of the depredation for which satisfaction is to be made.
• The first two are identical in language, and the last does not differ from them in substance.
The statute of 1891 provides as its first and fundamental grant of power that the court shall have jurisdiction of “All claims for property of citizens of the United States taken or destroyed by Indians belonging to any band, tribe, or nation in amity with the United States without just cause or provocation on the part of the owner or the agent in charge and not returned and paid for.”
In the case of Friend (29 C. Cls. R., 425) it is said: “It is apparent that the act relates exclusively to the claims for *113 property of citizens of the United States taken or destroyed by Indians, etc., as set forth in the first paragraph. That idea runs through all the rest of the act.” It is true that in that case the grievance related to a personal injury for which the court held there could be no recovery.
The depredation which Congress intended to afford a remedy for by the act of 1891 is limited by the words “taken or destroyed,” and is, therefore, necessarily circumscribed by that limitation to property which has been absolutely lost, either by theft or destruction. The act was not intended to cover consequential damages, which might have ensued to a claimant as an incident to the raid on his property, and for which there might be a recovery against a wrongdoer at common law. The court, in the construction of that section of the statute, has confined the liability of the defendants to the value of the property actually taken or destroyed, and has not allowed consequential damages resulting from the commission of the depredation.
In the case of Brice v. The United, States and the Cheyenne and Arapahoe Indians (32 C. Cls. R., 23) it is said, in reference to the act of 1834, u the Secretary of the Interior had no authority to adjust and allow a claim for consequential damages growing out of the taking of the property, and was therefore confined to the consideration of the claim for the value of the mules alleged to have been stolen.”
In this case, so far as the raid of the Indians affected the condition, the goods of claimants were untouched; they remained intrinsically, so far as condition is concerned, in the same state that they were antecedent to the raid and depredation of the defendant Indians.
The effect of the raid was not to destroy or damage the property by diminishing its quality or its quantity, but had the consequential effect of diminishing its value by producing a condition the effect of which was to decrease its commercial worth in precipitating its sale at a place where there was no market in the form of competition.
They did not take or destroy the property of the claimant, but deteriorated its value as the incidental and consequential ■ result of their raid. The court decides that the claimant is entitled to recover the value of the oxen, but no allowance is made for the damages to the goods for the reasons stated in the foregoing opinion.