Davis, J.,
delivered the opinion of the court:
March 5, 1894, the opinion of the court was delivered in this case and judgment entered dismissing the petition. (29 C. Cls. *216 R., 172.) Plaintiff:' now moves for a new trial upon several grounds of alleged error of fact and law.
This case was fully argued by most competent counsel and submitted upon evidence which it must be assumed they deemed then sufficient, and the conclusion of the court was reached after mature deliberation.
It has been said as to motions for new trials that they “are to be received with great caution, because there are few cases tried in which something new may not be hunted up, and because it tends very much to the introduction of perjury to admit new evidence after the party who has lost the verdict has had an opportunity of discovering the point both of his adversary’s strength and his own weakness.” (Hilliard on New Trials, 493.)
In Arnold v. Skaggs (35 Cal., 684) it was held:
“ The applicant must make a strong case, both in the respect of diligence in preparing for the trial and the truth and materiality of the new evidence and by the best evidence that can be obtained.”
This court held in Nance, administrator, v. The United States (23 C. Cls. R., 463):
“A departure from the strict rules of the common law on the subject of new trials upon the ground of ‘newly discovered evidence’ might lead to serious abuses against the rights of the Government in cases like the one at bar. If parties were permitted to take their chances in the submission of a case and then be allowed to introduce further evidence in case of failure upon a question of loyalty, a door would be opened through which many frauds might enter, to the great prejudice of the right of the defendant.”
The present plaintiff, who is the son and executor of the person who sustained the alleged loss, in an affidavit filed in support of this motion, states that since the trial “ he has discovered evidence to prove the fact that the ferryboat or scow mentioned in claimant’s petition * * * was maliciously set on fire by Indians belonging to the Yuma tribe or band of Indians in an incendiary manner” without just cause, and he adds in substance that the place of burning was in California; that the boat was properly guarded by Yuma Indians, serving with the consent of the Indian agent; that no village or dwelling was nearer than one-half mile from the place of alleged depredation, and that this place was not on an Indian reservation, nor was any fire near the boat, but fire was maliciously set to the boat by the Indians, who afterwards boasted of the *217 fact, that “ it was generally believed and conceded that it had been maliciously set on fire by Yuma Indians,” and the fire could not have been accidental.
The petition was filed April 29, 1891; in the following February argument occupying some three days took place in relation to the jurisdiction of the court; June 30,1892, the case was submitted, but decision was reserved until March 5,1894, when finding of fact and conclusion of law were filed, an opinion was read, and the case was dismissed; June 20, 1894, a motion for a new trial was filed, and January 24, 1898, this motion was argued. The case, therefore, has proceeded with unusual care; the plaintiffs have not been pressed, certainly no undue haste has surprised them; they were in full possession of all the facts; they had time and opportunity to develop them fully and they should have done so at the proper time.
All issues were fairly and clearly raised by defendants; they have been fully argued and were submitted to the court without any reservation by either party. It is now too late to reopen the case to again try the same issues upon new evidence.
Upon the legal question whether the Indian defendants can be held liable for the consequences of an act which was neither tortious nor grossly negligent, it is sufficient to refer to the decisions in Welch v. The Cherokee Nation (32 C. Cls. R., 106) and Price v. The Osage Indians (ante, p. 106). The liability of a tribe was not created by the Indian depredation act of 1891, which is jurisdictional, but by earlier statutes. The words of the act of 1834 (4 Stat. L., p. 729, sec. 17) are that if any Indian shall “take, steal, or destroy.” Whether anything short of intentional destruction was intended by the statute we need not now inquire. It is sufficient to say that the plaintiff submitted the case on evidence which indicated neither malicious intent nor gross negligence, and he then contended that neither was essential to a recovery. The court remain of the opinion that where the facts and circumstances shown by the evidence were such that an ordinary defendant would not be deemed guilty of a tortious act, it can not be held that Indians are liable within the intent and meaning of the statutes.
As, however, the new evidence authorizes a modification of the findings, which, in the opinion of this court, does not affect the result, the second finding is amended so as to read as follows :
“The fires above referred to were those of the Yuma Indians, dwelling in a village adjacent to and near by the place where *218 (¡be boat stranded. It does not appear that the fires were kindled from any malicious intent or design to destroy the boat. It does not appear how near to the boat the Indian village was situated, nor what was the purpose and character of the fires —i. e., whether they were ordinary fires for cooking .food or fires for burning grass or brushwood; nor whether they were kindled before or after the boat stranded; nor that the Indians who kindled them had been notified of the stranding of the boat and that she could not be removed; nor that they were guilty of negligence.”
With this exception the motion is overruled.