WeldoN, J.,
delivered the opinion of the court:
This is a proceeding to recover from the defendants the value of certain property which is alleged to have been taken from the claimant on the 1st day of November, 1894, in the State of Washington, by the defendant Indians.
The property consisted of 360 logs, alleged to be worth the sum of 86.40 per log, amounting in the aggregate to the sum of $1,881.60. The logs had been drifted by high water onto the reservation of the Indians, and because of that a number of the Indians claimed salvage on them.
*27 It is in substance averred that, with the consent of the agent of the Indians, the claimant agreed to pay salvage to them at the rate of $1.50 per thousand; and the Indians on their part agreed to safely keep the logs' for claimant until his return; that in consequence of a severe storm the claimant was unable to return until the end of .fifteen days, when he found that the Indians had cut a number of the logs into cord wood and disposed of the balance to other parties, whereby the logs became wholly lost to the clainiant.
The facts show that the claimant oymed the logs jointly with Edward Green, who was his partner, but who before the alleged depredation had left for British Columbia, having, as it is alleged, sold partnership property and misapplied the funds.
In the view which the court has taken of the law of this case, it is not necessary to inquire as to the right of the claimant to maintain this suit in his own name; a much graver question than that arises, going to the jurisdiction of the court.
This proceeding is peculiar in its facts, and in the many cases which have been decided under the act of March 3,1891, entitled “ An act to provide for the adjudication and payment of claims arising from Indian depredations” (Supp. R. S., vol. 1, 2d ed., p. 913) no case of like character has been the subject of adjudication.
If the allegations of the petition be true, the claimant has suffered a wrong at the hands of the Indians, but is it such a wrong as is contemplated by the act of. Congress ?
It is not every wrong that amounts to a depredation. The term “depredation” is defined to be “the act of plundering, a robbing, a pillaging,” and the depredator to be “one who plunders or pillages, a spoiler, a waster ” (Century Dictionary). The term depredation, as defined and used in common parlance, implies one or more of the following conditions: Force, trespass, violence, a physical taking by force from the actual or constructive possession of the owner or person authorized to hold the possession, or ■*£ destruction of something valuable.
The statutes of the United States have as a uniform policy adopted as the basis of liability the taking or destruction of *28 property which under the law would either amount to a theft or a trespass, and Congress have never sought to afford redress to the citizen for wrongs which relate to contracts or grievances connected with civil rights of citizens not accompanied by the incident of depredation.
The act of May 19, 1796 (1 Stat. L., 469), making provision for the reimbursement of the citizen under certain circumstances, is based upon the idea of pillage, theft, and destruction, and the remedy or compensation provided in the fourteenth section is based upon the theory of a raid with violence; and so the act of March 30,1802 (2 Stat. L., 139), proceeds on the same theory.
By the act of June 30,1834 (4 Stat. L., 731), the same principle of liability1- was preserved in making the right of the citizen dependent upon a taking wholly disconnected with an agreement or contract and predicating it upon a taking having incidents of forcible wrong and depredation.
In the act of February 28, 1859 (11 Stat. L., 401), repealing the act of 1834 as to the liability of the United States, it is provided that the Indians shall not be discharged from obligation for “trespassing on white men as described in said act.”
In the joint resolution of June 25, 1860, preserving rights already accrued under the act of 1834 (supra), the language is taken or destined “in certain cases by Indians trespassing on white men as described in said act.”
In section 2098, Revised Statutes, it is, in substance, provided that money appropriations for certain purposes shall be used in payment of claims for Indian “ depredations,” and that no claim for Indian “depredations” shall be paid until Congress shall make a specific appropriation for that purpose.
In the act of May 29, 1872 (17 Stat. L., 190), authorizing the Secretary of the Interior to prescribe rules for the prosecution of claims “for compensation for depredations committed by the Indians,” is an express recognition of the theory that the claim must be the result of a wrong having the elements of a depredation committed by the Indians.
In the act of March 3, 1885 (23 Stat. L., 376), the word “ depredation” again occurs, and the statute limits the investí- *29 gation to claims “ of citizens of tbe United States on account of depredations committed. ”
Tbe act of 1885 is expressly recognized by the act of March 3, 1891 (supra), under which the petition was filed and which is the legal basis of the jurisdiction of the court to investigate claims for Indian depredations.
The purpose of these citations is to show that Congress, from the inception of the policy of dealing with the Indians upon the basis of making them and the United States responsible for the consequences of certain acts, have most carefully excluded from that policy all liability growing out of what might be called commercial or business relations between the citizen and the Indian.
Taking the allegations of the petition according to their legal effect, they establish a contract between the claimant and the Indians which was most flagrantly violated by the' Indians, and if thej’’ were amenable to the law as white men, in a court of competent jurisdiction the right of the claimant to redress would be unquestionable.
The Supreme Court, in affirmation of this court, has held that the act of 1891 must be strictly construed, and has disallowed consequential damages arising from the depredations of Indians on the property right of the claimant. It is said:
“Now, as we have said, we are not at liberty to consider whether there may not be some equitable claim against the Government or tbe Indians for such consequential damages. We are limited to the statutory description of the obligations which the Government is willing to assume and which it has submitted to the Court of Claims for determination. We may not enter into the wide question of how far an individual taking or destroying property belonging to another may be liable for all the damages which are consequential upon such injury or destruction. If Congress had seen fit to open-the doors of the court to an inquiry into these matters doubtless many questions of difficulty might arise, but as it has only declared its willingness to subject the Government to liability for property taken or destroyed, we may not go beyond that and adjudge a liability not based upon the taking or destruction of property, but resulting from the destruction or taking of certain property to other property not taken or destroyed.” Price v. The United States and Osage Indians (174 U. S. E., 376); Price v. United States and Osage Indians (33 C. Cls. R., 106).
*30 It will be seen by this' quotation from the opinion of tbe Supreme Court that tbe act of 1891 is not to be extended by equitable' construction beyond tbe terms of tbe statute, and .that tbe defendants are to be protected against all liability wbicb does not come strictly witbin tbe ternis of tbe, law. Tbe purpose of tbe law is to guard tbe citizen against tbe violence and depredations of tbe Indians on property, arising from tbe violation of tbe obligation of tbe Indians not to commit a damage to tbe rights of tbe citizen by tbe perpetration of acts involving tbe wrong of theft, trespass, or destruction.
Applying tbe rules of law applicable to tbe condition of persons subject to all tbe requirements of civilized life, the defendant Indians are guity of a conversion of tbe property, and because of such conversion are guilty of a wrong for wbicb an action ex delicto could be maintained; but that technical liability as to form is not sufficient to bring tbe transaction witbin tbe purview of tbe statute, and does not supply tbe claim of tbe petitioner with tbe elements of a cause of action such as is required by tbe purpose and polity of the law. For the reason above stated tbe courtis without jurisdiction, and tbe petition is therefore dismissed.