Howky, J.,
delivered the opinion of the court:
This action is for the recovery of the value of certain property alleged to have been taken from the plaintiff by the defendant Indians on territory supposed at the time of the taking to be within the State of Kansas, but which, upon a subsequent survey of the land, was discovered to be land known as a part of the Cherokee Strip.' Judgment is asked under the provisions of the act of March 3, 1891, providing for the adjudication and payment of claims arising from the depredations of Indians. (26 Stats., 861.)
The action is defended upon the ground that at the date of the alleged depredation the claimant was unlawfully within the Indian country, and that the evidence is insufficient to establish .the loss of the property through a depredation committed by the Osages.
The jurisdictional facts of citizenship of the plaintiff and the amity of the Osage tribe sufficiently appear, and the depredation is reasonably established. The sole question left for determination, then, is the right of the plaintiff to recover under the circumstances of his trespass upon the territory where the depredation occurred, and whether this was Indian country, unlawfully occupied by plaintiff, within the meaning of the laws relating to Indian depredations.
It appears that plaintiff was a settler in the country where the depredation occurred, in the belief that he was in the State of Kansas; that good grounds existed for this belief, not only on the part of the plaintiff, but on the part of other persons who had settled in that immediate section; and an actual survey of the land was required (after the taking of the property) to establish the mistake of plaintiff and other settlers in establishing their homes over upon the Indian line. When the survey was made and the line established it was ascertained that the settlers were a short distance below the *398 Kansas line. Plaintiff was finally ejected from the land by the military forces of the United States acting under proper authority. He had no title to the premises from whence his property was taken, and never, at any time, made any inquiry of the land office whether the land upon which he had located was open to settlement. It also appears that, during- the time the settlers were trespassing upon the land where the depredation occurred, the Indian agent gave the settlers permission to settle upon the Strip. It does not appear, however, that plaintiff acted upon this authority, or that he had knowledge himself of the agent’s notice to the settlers that they might stay there.
For the plaintiff it is contended that if he was unlawfully within the Indian country, the scene of the depredation was at least not within the country of the defendant Osages, and that the Osage Indians can not be relieved of the consequences of the depredation upon the ground that plaintiff was unlawfully within the country of the Cherokee Indians. For the defendants it is urged, upon the authority of one of the early decisions of this court upon the subject of Indian depredations (Welch v. United States et al., 32 C. Cls. R., 106), that plaintiff was an intruder, and being within the Indian country generally, the defendants may avail themselves of that fact in bar of the right of recovery.
Much may be said in support of the justice of this claim, and yet there are other things which may be stated in behalf of the correctness of the position assumed by the defendants. In WeleWs case (swpra) it was declared that the statute assured indemnity to white men only'xn two classes of cases, namely, where the Indians were intruders in the white man’s country and where a white man was lawfully within the Indian’s country. But there the plaintiff was an intruder upon the lands of the Cherokees, and though it was held that the claimant could not recover, the suit was against the Cherokees for a depredation committed upon their own soil. The gist of that decision, upon a careful examination of everything disclosed by its language, is that the Cherokee Nation did not become liable to the person who was unlawfully within its territory, and the Government did not therefore become responsible to such a person for the consequences of *399 bis unlawful acts. But here it appears that the Osage depre-dators were also intruders upon the same land on which plaintiff had wrongfully located himself. Plaintiff was there by mistake, and the Osages were there in violation of their treaty obligations.
The case cited also holds that the Indian trade and intercourse act of June 30,1834 (4 Stats., 129, sec. 17), as modified by the act of February 28, 1859 (11 id., 401), and the joint resolution of June 25, 1860 (12 id., 120), created and defined liabilities in these cases. Before an application could be made for recovery where a depredation had been committed it must first have been made to appear under those acts that the Indians committing the wrong did so within the Indian country. The jurisdictional act of 1891 provides the remedy generally where the property was taken, merely reciting that the taking must appear to be without just cause or provocation.
Measured by the rules of the common law the plaintiff was guilty of a trespass upon property that did not belong to him. Trespass upon the close of another does not consist of intention but of the fact of being unlawfully upon the other’s close.
In the circumstances of this case the Indian agent could not license persons to settle within any part of the Indian country. Even if plaintiff acted upon the statement of the Indian agent to the settlers to remain upon territory below the Kansas line, this agent was without authority to fix the status of the settlers for the purpose of giving them rights against the Indians whose title had not been extinguished or, perhaps, against the rights of any of the tribes within the Indian country. To hold that the agent was possessed of any such authority would be to say that an Indian agent had power to nullify the obligations of treaties as well as the statutes of the United States.
But inasmuch as plaintiff was in the exercise of his supposed right to be upon the land, and the Osage defendants were willfully intruding upon the same land, even though it belonged to the Cherokees, we have reached the conclusion, upon a careful review of the questions at issue upon the second argument, that the depredation occurred as to the defendants not within the Indian country within the meaning of the act fixing-liability in these cases. While the question is not entirely free from.doubt, we think plaintiff is entitled to the benefit of *400 this doubt, inasmuch as the defendants have their remedy by appeal, and by the entry of judgment here for the defendants plaintiff is (by reason of the amount involved) precluded from taking an appeal. Judgment will therefore be entered for plaintiff for the amount established by the findings.