WeudoN, J.,
delivered the opinion of the court:
On April 28, 1902, the court dismissed the petition upon the following findings of fact in substance:
At the time of the depredation hereinafter stated the claimant was a citizen of the United States. In the fall of 1873, in the Indian Territory, Indians belonging to the Kiowa tribe took and destroyed property of the kind and character described in the petition — the property of the claimant— which was reasonably worth at the time the sum of $896.' The property was taken from the possession of a hunting *164 party in the said Territory to which the claimant had hired his horses, wagons, etc., for the purpose of hunting and which were encamped in said Territory at the time the property was taken. At the time of the depredation the defendant Indians were in amity with the United States.
Upon said findings the court decided as a legal conclusion that the petition be dismissed.
Because of alleged error in the conclusions of the court the claimant made a motion for a new 'trial. In support of the motion the counsel for claimant relies on the case of Merchant v. The United States and the Osage Indians (35 C. Cls. R., 403).
The facts in-the Merchant case differ from the facts in this case, in the very essential particular that in the Merchant case the claimant was in the- Indian Territory (to wit, the Cherokee Strip), and Indians belonging to the Osage tribe committed a depredation on the property of the claimant, but the claimant at the time the depredation was committed was not on the lands of the .Indians committing the depredation, and at the time of the depredation he was passing through the Indian country on an alleged right of transit, and along a trail long recognized by the Indians and public.
In this case there is no alleged right in the Indian Territory, and the persons in possession of the property were not in tho exercise of the right of transit as in the Merchant case (sujmi), but in the Indian country in the exercise of a vocation which, above all others, is most inimical to the normal and natural .rights of the Indians. The party in charge of the property, from the testimony and the finding, was equipped as a hunting party. The court says in the Merchant case that it differs from the Welch case (32 C. Cls. R., 106) in this, to wit:
‘ ‘ The claimant in this case was passing through the territory of the Cherokee Indians in the exercise of an alleged right and upon a trail or road which had been recognized by the Indians and the public for nranyr years before the commission of the depredation.”
In this case the facts require us to look more closely into the rights of the parties. The United States is not only interested in the result of this proceeding as the guardian of the *165 Indians, but there is an additional liability on the part of the United States which makes them responsible for the payment of the judgment in case there is a deficiency in the funds of the Indians.
The act of March 3, 1891 (26 Stat. L., 851), providing “for the adjudication and payment of claims arising from Indian depredations,” and upon which this suit is based, provides—
“That the amount of any judgment so rendered against any tribe of Indians shall be charged against the tribe by which, or by members of which, the court shall find that the depredation was committed,- and shall be deducted and paid in the following manner:
“First from annuities due said tribe from the United States;
“Second, if no annuities are due or available, then from any other funds due said tribe from the United States arising from the sale of their lands or otherwise;
“Third, if no such funds are due or available, then from any appropriation for the benefit of said tribe, other than appropriation for their current and necessary support, subsistence, and education;
“And, fourth, if no such annuity, fund, or appropriation is due or available, then the amount of the judgment shall be paid from the Treasury of the United States;
“ Provided, That any amount so paid from the Treasury of the United States shall remain a charge against such tribe, and shall be deducted from any annuities, fund, or appropriation hereinbefore designated which may hereafter become due from the United States to such tribe.”
From the above provisions of the statute it will be seen •that the United States are responsible in case there is no fund of the Indians out of which a judgment can be paid, with the right to be reimbursed in case any fund becomes available after the rendition and payment of the judgment from the Treasury of the United States. This is in addition to the interest which the United States’ have in the welfare of the Indians and the responsibility which from their long-established policy rests upon the United States.
The United States have in dealing with the Indian tribes attempted, in so far as the same is practicable to segregate, and set apart districts of country in which the Indians have 'the exclusive right as a habitat, and from which the white *166 man is excluded, in order that the Indians may have a home free from intrusion and in the full enjoyment of all the incidents of that mode of life suitable to his habits and conditions. Among the most substantial rights of the Indians is the right to hunt, as from .that source he derives his subsistence and support.' The party in charge of the propertjr at the time of the alleged wrong was engaged in the very act which above all others infringed upon and interfered with the natural and fundamental right of the Indians.
Whatever may be said as to the liability of a tribe of Indians committing the depredation, being within the reservation of another tribe of Indians and not within their own as to the rights of the United States, the claimant’s party was a wrongdoer and trespasser, and therefore guilty of a wrong against the United States. The depredation resulted from a primary wrong by the claimant’s party against the United States, and to hold them responsible for the consequence of such a depredation would be in violation of that well-established theory of the law that a party to recover must be free from wrong in order to place his adversary in a position of responsibility. The claimant must be free from substantial fault on his part before he can be hoard to complain of the fault of the defendants. Under the circumstances and facts of this case at the time of the alleged depredation the hunting party was acting in violation of the policy of the United States in guarding the Indian country and reservations of the Indians against the intrusion of white men.
The act of 1834 (4 Stat. L., 731) provides that if any Indian or Indians belonging to any tribe in amity with the U nited States shall, within the Indian country, take or destroy" the property of any person lawfully within such country, such persons, upon certain conditions being complied with, shall be entitled to “ eventual indemnification ” from the United States.
The motion for a new trial must, therefore, be overruled.