Booti-i, J.,
delivered the opinion of the court:
The first question presented by the record before us is one of jurisdiction. The findings disclose that this is a suit to recover the value of certain property of the claimant alleged to have been illegally taken by the Chickasaw Indians in the year 1867. Hamilton & Humes, partners, were, in the years 1858, 1859, I860, and 1861 licensed Indian traders, engaged in trading with the Chickasaw Indians, and for the purpose of conducting their business owned and occupied three storehouses, one located at Fort Washita and the other two at Tishomingo, within the Chickasaw Reservation. In 1867 all of this property was sold by the governor of the Chickasaw Nation, in pursuance of an act of the legislature of the Chickasaw Nation authorizing him so to do, and the proceeds of said sale covered into their national treasury for national purposes.
The status of the Chickasaw Indians in 1867 was that of a “ domestic dependent nation. A"limited sovereignty under the dominion of the United States.” (Cherokee Nation v. Georgia, 5 Peters, 174.) Under various treaty stipulations between the Chickasaws and the United States they were permitted to maintain á domestic government for the regulation of their own internal affairs.
By article 4 of the treaty between the United States and • the Choctaw and Chickasaw Indians, proclaimed July 10, 1866 (14 Stat. L., 772), it is provided:
“ 4. The general assembly shall have power to legislate upon all subjects and matters pertaining to fhe intercourse and relations of the Indian tribes and nations resident in the said Territory, the arrest and extradition of criminals *286 escaping from one tribe to another, the administration of justice between members of the several tribes of the said Territory, and persons other than Indians and members of said tribes or nations, the construction of works of internal improvement, and the common defense and safety of the nations of the said Territory. All laws enacted by said council shall take effect at the times therein provided, unless suspended by the Secretary of the Interior or the President of the United States.”
Under the authority there conferred the assembly of the Chickasaw Nation on July 17, 1867, passed the act.set out in Finding Y, under which the property of the claimant was taken possession of and sold and the proceeds thereof covered into the treasury of said nation for national purposes. That act was never suspended by the Secretary of the Interior or the President of the United States, and the taking, therefore, was in effect by legislative sanction.
The act of March 3, 1891 (26 Stat. L., 851), being an act to provide for the adjudication and payment of claims arising from Indian depredations, confers jurisdiction upon this court “ to inquire into and finally adjudicate *' * * First. All claims for property of citizens of the United States taken or destroyed by Indians belonging to any band, tribe, or nation in • amity with the United States, without just cause or provocation on the'part of the owner or agent in charge, and not returned or paid for.”
The act of March 3, 1891, is not broad enough to embrace a taking of the property of a citizen by the Indians under the circumstances in this case.. The class of cases coming within its terms and meaning are those where citizens are divested of their property by way of depreciations. The word “ depredations,” as found in the title to act, inherently excludes the idea of a peaceful taking of property in pursuance of law and after due notice of an intention so to do. The act of March 3, 1891, is the culmination of various antecedent statutes upon the subject of Indian depredations, in each of which it distinctly appears that relief was only to be afforded citizens for the forcible and larcenous taking or destruction of their private property, either clandestinely or in their view by threats of, and not infrequently, personal violence. (Davidson v. United States, 34 C. Cls. R., 170; *287 Jaeger v. United States, 33 C. Cls. R., 214; Ayres v. United States, 35 C. Cls. R., 26.) The passage of the legislative act- by which claimant was divested of his property was sufficient notice' to him (his agents being in possession of the same) that the Chickasaw Nation claimed legal authority to dispose of the same. To permit claimant under act of March 3, 1891, to recover for its value would be to hold that this court has power and authority to review legislative acts that are within the authority of the Chickasaw Nation.
The claimant by applying for and accepting a license to trade with the Chickasaw Indians, and subsequently acquiring property within the limits of their reservation, subjected the same to the jurisdiction of their laws. Bedress for any infringement of their property rights, by national authority, in pursuance of legislative enactment can not be granted in this kind of a proceeding, and the petition is dismissed.