AtkiNSON, J.,
delivered the opinion of the court:
The claim herein against the United States grew out of a contract to construct a dry dock at the Brooklyn (New York) Navy Yard, dated October 13, 1887. Prior to the execution of the contract the plaintiff company was furnished, at its request, by the officers of the Navy Department, a profile made by B. O. Asserson, a naval engineer at said navy yard, purporting to show the different strata of soils that would be encountered in the excavation for *204 said dry dock, which profile showed 10 borings 50 feet apart and averaging about 40 feet in depth. This profile and report did not show the existence of quicksand to any considerable extent; and yet, when the dock excavations made by plaintiff, under its contract to construct the same, had reached the depth of about 32 to 35 feet, a stratum of quicksand was struck which delayed the work for a period of several months and, plaintiff claims, caused an additional expenditure of a large sum of money to overcome the same, which loss, plaintiff avers, would not have resulted if said profile had shown the true character of the underlying soils.
On this theory the plaintiff brought suit, and the case was adjudicated adversely to plaintiff (33 C. Cls., 217), and on appeal was affirmed by the Supreme Court (172 U. S., 372) on the ground that the soils shown in the profile submitted to the claimant for its information was not a warranty by the Government as to the character of the underlying soils. But in the present hearing of the case that question has been swept away by the special jurisdictional act of February 24, 1905 (33 Stats., 743), which is as follows:
“ That jurisdiction is hereby conferred on the Court of Claims to readjudicate the case of J. E. Simpson and Company against the United States, being numbered eighteen thousand and twenty-eight on docket of the said court, upon the evidence therein and such further competent evidence as may be adduced by either party within such resonable time as the court may fix and determine, and if the said court shall find upon readjudication that the said firm sustained loss in the construction of a timber dry dock for the United States at the New York Navy Yard during the years eighteen hundred and eighty-seven to eighteen hundred and ninety, by reason of the fact that the soils underlying the site selected and provided for the said dry dock by the United States, were unstable and were not as described by a profile and report, furnished to the said firm by agents of the United States, prior to the execution of the contract for the said dry dock between the said firm and the United States, the. said court is hereby authorized and empowered to enter judgment in favor of the said firm for the amount of its loss so found, not exceding the sum of fifty thousand dollars.”
*205 Under the jurisdictional act the questions raised may be stated under the three following heads:
1. Were the soils underlying the site of the dock unstable?
2. Were the soils correctly shown by the Government profile?
3. Did plaintiff sustain a money loss by reason of the failure of the Government’s profile and report to correctly show the character of the underlying unstable soils ?
(1) Finding VII answers the first query in these words:
“In the prosecution of the work the claimant encountered unstable soils and quicksand other than those indicated by said profile, the magnitude of which was such as to surprise both parties, and by reason of which the driving of piles necessitated several months’ delay and the expenditure of a much larger sum of money, material, and labor than would have been necessary had. the underlying soils been as indicated in the profile.”
The above fact as to the surprise of both parties is not questioned or disputed by counsel for either side. The defendants, however, at the- present hearing contend that coarse sand and clay mixed with mica sand indicated the-existence of quicksand, and that this fact should have required a more careful examination by the plaintiff company before the contract was entered into.
(2) Did the Government’s engineer (P. C. Asserson) in his official profile and report correctly show the unstableness of the soils underlying the site of the proposed dry deck ? We think not. Nowhere in either the profile or the report is quicksand mentioned. Micaceous sand, however, is mentioned; and while it may be construed to indicate the presence of quicksand to a limited extent, it is not quicksand and can not properly be considered as such. The excavations made by plaintiff in constructing the dry dock resulted in striking a continuous stratum or vein of actual quicksand at a depth of about 32 to 35 feet, which continued downward to and below the bottom of the dock. It would therefore seem only reasonable that 10 borings, 50 feet apart, made by a competent engineer to a depth of 40 feet or over, should have more clearly revealed the existence of so treacherous a substance as quicksand. On account of the failure of the engineer’s profile and report to *206 show tlie actual unstableness of the underlying soil, plaintiff was misled thereby; and it also appears that Engineer Asserson himself was deceived and misled by the result of his own finding's as to the extent of the stratum of quicksand subsequently found to exist.
(3) Did plaintiff sustain a money loss because of the failure of the defendants to show the actual conditions of the soils underlying the site of the dry dock? This question is also affirmatively answered by Finding VII. It is therein shown that:
“From the profile so submitted the claimant might reasonably have expected to have encountered some quicksand, but not to the extent actually encountered. This excess of quicksand so encountered caused the claimant in the prosecution of the work a damage of at least $50,000, the maximum amount fixed by the special jurisdictional act.”
Counsel for defendants admits a loss to plaintiff, because of the quicksand disturbance, but insists that the court, under the special jurisdictional act, is confined to the cost of the construction of the dry dock as an entirety, and unless there is shown to be an absolute loss in the cost of construction in excess of the compensation received, no recovery can be had under said act. In other words, he contends that it must be shown that unless the entire work of construction cost more than the amount received, the loss to the contractors, if any is shown, would be a loss of profits only.
We do not agree with this contention. The special act, in plain terms, requires the court to ascertain whether the contractors “ sustained loss in the construction of a timber dry dock for the United States at the New York Navy Yard during the years 1887 to 1890, by reason of the fact that the soils underlying the site selected for the said dry dock by the United States were unstable and were not as described by a profile and report furnished to the said firm by agents of the United States prior to the execution of the contract for the said dry dock between the said firm and the United States, the said court [Court of Claims] is hereby authorized and empowered to enter judgment in favor of the said firm for the amount of its loss so found, not exceeding the sum of $50,000.”
*207 On tbe first trial of the case, on the theory that the right of appeal might depend upon whether the damages sustained amounted to $3,000, the court found,.as a matter of fact, that the contractors sustained a loss “ considerably oven $3,000,” because the Government’s profile and report failed to show the existence of actual quicksand beneath the site it had selected for the dry dock. At the present hearing of the case — following the language of said special act of the Congress — the court reaffirms in part the same finding, except the loss incurred to the contractors, on account of the existence of the quicksand, is fixed at a sum of at least $50,000. No reference is made in said special act as to loss sustained by the plaintiff under the contract as a whole. On the contrary, it confines the court in explicit language to the contractors’ loss, if any, that resulted from the discovery of quicksand not clearly shown in the Government’s profile and report, upon which the contractors’ bid was based. Having found substantially the same state of facts as were found on the original adjudication of the case, so far as material here, it is our' duty under this act to enter a judgment for the plaintiff, notwithstanding the judgment rendered by the court at the former hearing.
For the reasons above stated, we decide that judgment should be awarded to plaintiff for the sum of $50,000, which is the maximum amount allowed by the jurisdictional act, and it is accordingly so ordered.
Howry, J., was not present when this case was heard and took no part in its decision.